

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
~~ATTORNEY GENERAL~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. Bascom Giles, Commissioner
General Land Office
Austin, Texas

Dear Sir:

Opinion No. O-1235
Re: Construction of a lease by
the Commissioner of the
General Land Office on public
school land to Renwar Oil
Corporation.

　　　　This will acknowledge receipt of your letter of December 8, 1939, requesting an opinion of this department on certain questions arising in connection with Lease No. 22990, executed by W. H. McDonald, Land Commissioner, on November 5, 1937, covering 160 acres in Kleberg and Kennedy County to Renwar Oil Corporation. You enclosed with your request a photostatic copy of the application for the lease by Renwar Oil Corporation dated September 7, 1937, a photostatic copy of the lease and a photostatic copy of a bond which is not dated but has the stamp of your office marked "Received November 5, 1937" on same, signed by Renwar Oil Corporation, Principal, Rowan S. Bond and S. F. Hurlbut, Sureties. The lease has the following provisions:

　　　　"NOW, THEREFORE, I WM. H. MCDONALD, Commissioner of the General Land Office of the State of Texas, by virtue of the authority vested in me, do hereby lease and grant unto RENWAR OIL CORP., CORPUS CHRISTI, TEXAS the exclusive right to prospect for, produce and take out of the aforesaid area for a period of FIVE YEARS and as long thereafter as any minerals covered hereby are produced therefrom in commercial quantities, not to exceed TWENTY FIVE YEARS, all oil and gas and other minerals, except gold, silver, platinum, cinnabar and other metals and precious stones that may be therein, upon the following conditions, to-wit:

　　　　"1. If none of such minerals be produced in commercial quantities within five years this lease shall terminate.

　　　　"2. The owner hereof shall pay to the Commissioner of the General Land Office at Austin, Texas, for the use and benefit of the State of Texas, annually in advance

25¢ per acre during the life hereof, so long as the area may be held undeveloped, and not to exceed five years without production.

"3. When production of oil, gas or other minerals covered by this lease is secured the owner shall pay to the Commissioner of the General Land Office, at Austin, Texas, for the use and benefit of the State of Texas, 1/8 of the value of the gross production of oil, 1/8 of the grossproduction of gas, 1/8 of the gross production of sulphur, and 1.8 of the value of other minerals, that may be produced from said area. $320,000.00 out of the 3/64 of the 7.8 and as and if produced. We agree to commence operations for the drilling of a well in search of oil and/or gas on or before 350 days from the date of the delivery of this lease and to continue the drilling thereof with due diligence until the depth of 7000 feet has been reached or oil and/or gas in paying quantities has been produced therefrom. Failure to commence said well as aforesaid shall render this lease null and void to both parties."

The above provisions of the lease are the same as set out in the mineral lease application or bid by Renwar Oil Corporation. The bond recites the lease, and the agreement to drill contained therein and is conditioned on the drilling as provided in said lease in the penal sum of $4,500.00 in favor of the Commissioner of the General Land Office of Texas and his successors in office. In your letter you state that on December 6, 1939, in compliance with the demand of your department, the $4,500.00 penalty in said bond was paid to you. You also stated in your letter that the Renwar Oil Corporation paid the current year's rental beginning November 5, 1939 on August 5, 1939. The application and bond have been endorsed on them the following:

"December 8, 1938.

"The period of time allowed in the drilling obligation is hereby extended for one year after its original expiration date.

(Signed) W. J. McDonald
Commissioner"

It will be noted that the one year has expired should such endorsement be given any effect.

You ask for an opinion on the following questions:

1. Since no bond was mentioned in the bid for a lease nor in the lease issued should the land commissioner continue in force and effect the lease by virtue of the payment of the penalty provided in the bond for failure to drill?

2. Should the lease be declared forfeited for failure to comply with the terms of the bid and lease as issued thereon?

It is the opinion of this department that in construing the three above mentioned instruments that the lease in question terminated or became null and void on the failure of the lessee to commence operations for the drillin of a well in search of oil and gas on or before 350 days from the date of the delivery of the lease because of the provision in the application and lease that "failure to commence said well as aforesaid shall render this lease null and void to both parties." It will be noted that in the lease lessee was not tiven an option or election to either begin this well or pay an agreed rental or comply with the conditions of a bond. It is true that ordinarily we do not find in oil and gas leases an absolute agreement to drill a well together with a provision that the lease shall be null and void, terminate or end on failure to drill the well in a specified time, but we can see no reason why such a contract could not be entered into. The Renwar Oil Corporation set out in their application and bid this exact provision as being a provision by which it was willing to be bound. The courts have always construed oil and gas leases against the lessee and certainly such construction would be given in this instance since the lessee is responsible for the above provision being in the lease.

We do not think that the bond, which was not mentioned in the application or lease, has any bearing on whether or not the lease terminated or became null and void for failure to drill the well. If it could have any bearing on the contract between the parties with respect to the lease, it would only have to do with the damages for violation of the covenant or agreement to drill the well and not with the provisions that the lease should become void if the well was not drilled in time. This lease was executed after competitive bidding as required by chapter 271, Acts 42nd Legislature, p. 452, and statutes therein referred to. Suppose some other company had submitted an exact bid as was submitted by Renwar Oil Corporation with the exception of the provision with respect to drilling a well within 350 days. As between such bid and Renwar's bid the Land Commissioner would have been justified in considering Renwar's bid a higher bid, as the agreement to drill the well and the provision that the lease would become null and void if same was not drilled within a specific time was a valuable added consideration. The effect of the Commissioner's action would result in the lease not having been given to the highest and best bidder which would be doing indirectly what the statutes prevent him from doing directly. Article 5356, Revised Civil Statutes 1925. We find nothing in the statutes, in the application for lease or in the lease

itself whereby the Commissioner of the General Land Office is authorized to extend the drilling obligation in a lease of this character or to accept the forfeit of a bond and payment thereof in lieu of the drilling provisions contained in the application and in the lease.

It is difficult to always tell whether a provision in a lease similar to the one above is a special limitation on the estate granted or a condition subsequent. If it is a limitation the lease ipso facto terminates on the lessee's failure to begin drilling operations.

In the case of Caulk vs. Miller, 18 S.W. (2d) 195, C.C A. of Galveston, wherein the grantee in a deed agreed to begin actual drilling of an oil well within six months after the date of the sale and that failure to commence drilling operations within six months he should forfeit all of his rights in the minerals. The court held that the failure to begin drilling operations within six months ipso facto terminated the title to the minerals. In the case of Gulf Production Company vs. Kishi et al. 103 S.W. (2d) 965, Comm. App. Sec. B, opinion by Judge Smedley, the following language was used, in connection with a similar provision in the lease:

> "The express provisions of the leases that the rights or estates of the lessee shall terminate on its failure to drill the wells are limitations upon the duration of the estates created by the leases."

See also Gulf Production Company et al vs. Continental Oil Company et al, by the Supreme Court of Texas, opinion by Chief Justice Cureton on November 11, 1939, and not yet reported.

If such a provision is a condition subsequent then it is necessary for the lessor to make a re-entry or its equivalent in order to terminate the lease.

In the case of Curry vs. Texas Company, 18 S.W. (2d), C.C.A., Eastland, the following language was used which expresses the well settled law:

> "If the forfeiture provision be a condition subsequent, then we are unable to attach any importance to the precise wording of same. The rule is as ancient as the common law that a forfeiture provision, which is a condition subsequent, that may work a defeasance of an estate in land, does not affect such defeasance in the absence of a re-entry, or equivalents, which in the course of time have come to be recognized."

Should we be mistaken in construing the above provisions of the lease as constituting a special limitation upon the estate leased instead of a condition subsequent, it would be necessary for you to advise the lessee that the lease is at an end and has no further force and effect on the above described property in order to put the lease to an end, which precaution you should take if you desire to be certain that the lease is forfeited or terminated. As a general rule forfeitures are not favored by the court, but because of the nature of an oil and gas lease and the inequity in allowing a lessee to sit back and hold lessor's property without development of same and prevent lessor from receiving the benefits therefrom in the nature of royalty, the courts have favored forfeiture of oil and gas leases for failure on the part of the lessee to comply with drilling obligations. See Stephenson, et al v. Stitz, et ux, 225 S. W. 812, C.C.A. of San Antonio, where the following language is used:

"The contract involved being an oil and gas lease, it will be strictly construed against the lessee, and, although under the general rule forfeitures are not favored, they are in fact favored in contracts of this character."

We trust that the above sufficiently answers your request.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ D. D. Mahon

D.D. Mahon
Assistant

DDM:jm:egw

APPROVED DEC 23, 1939
/s/ GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By BWB Chairman